IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARL N.,[1] </br></br> Plaintiff, </br></br> v. </br></br> KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] </br></br> Defendant. | No. 19 C 5338 </br></br> Magistrate Judge </br> Maria Valdez |

# MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Carl N.'s claims for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 17] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 30] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Kilolo Kijakazi has been substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. PROCEDURAL HISTORY

On November 19, 2013, Plaintiff filed a claim for DIB, alleging a disability since February 1, 2009. The claim was denied initially and upon reconsideration, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 22, 2016. On April 29, 2016, the ALJ denied Plaintiff's claim for DIB, finding him not disabled under the Social Security Act (the "Act"). The Social Security Administration Appeals Council denied review on March 22, 2017, and Plaintiff appealed to this Court. Finding error, this Court remanded the case on July 13, 2018.

After remand, another hearing before the same ALJ was held on February 14, 2019. Plaintiff personally appeared and testified at the hearing and was represented by counsel. A medical expert ("ME") and vocational expert ("VE") also testified. At the hearing, Plaintiff amended his alleged onset date to September 24, 2012. On March 4, 2019, the ALJ denied Plaintiff's claim for DIB, finding him not disabled under the Act. The Appeals Council then denied Plaintiff's request for review, leaving the ALJ's March 4, 2019 decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. §

404.1520(a)(4). The ALJ first noted that Plaintiff last met the insured status requirements of the Act on March 31, 2014. The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity during the period from his amended alleged onset date of September 24, 2012 through his last date insured of March 31, 2014. At step two, the ALJ concluded that Plaintiff had the following severe impairments: history of prostate cancer, with residual urinary incontinence and incisional pain, and mild right knee osteoarthritis. The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal a Listing.

Before step four, the ALJ determined that Plaintiff retained the Residual Functional Capacity ("RFC") to perform light work with the following additional limitations: no constant bending or stooping. At step four, the ALJ concluded that, through the date last insured, Plaintiff was capable of performing his past relevant work as a photo technician, office manager, and fast-food manager. Accordingly, the ALJ ultimately concluded that Plaintiff was not under a disability, as defined in the Act, at any time from September 24, 2012, the amended alleged onset date, through March 31, 2014, the date last insured.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

3

has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial

4

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to

5

a Plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a Plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ's determination that the evidence does not support the symptoms alleged by Plaintiff is unsupported and premised upon improper inferences; and (2) the ALJ failed to account for Plaintiff's non-exertional limitations, specifically, his mental impairments. Each issue will be discussed below in turn.

A.      **The ALJ's Assessment of Plaintiff's Subjective Symptomatology**

Plaintiff asserts that his "inability to function in a workplace at any exertional level is due primarily to his incontinence" which rendered him "unable to return to work because he would have frequently needed to be away from his work station for 25 to 30 minutes, so he could go to the bathroom, change, and clean up." (Pl.'s Mem. at 2.). According to Plaintiff, in finding that he was not disabled based on his incontinence, the ALJ "baselessly undermin[ed] Plaintiff's veracity and rel[ied] upon impermissible inferences." (*Id.* at 10.)

With respect to Plaintiff's incontinence, the ALJ first noted Plaintiff's testimony that he had to change his pads five to six times per day and the changings took 25-30 minutes each. (R. 1151.) The ALJ further noted Plaintiff's testimony that "it took so long to change because his pad and brief would get saturated, so he would have to take off his pants and the brief, wash, and change the pad and brief and sometimes his clothes." (*Id.* at 1152.) However, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [the incontinence] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) In keeping with that determination, the ALJ concluded that "the evidence generally fail[ed] to support that [Plaintiff] would be required to take a significant amount of unscheduled breaks or that he would exceed any normal breaks simply by changing his pads/briefs/clothing multiple times per day." (*Id.* at 1154.)

7

In reaching her conclusion, the ALJ pointed to the ME's testimony "that it was unusual that it would take [Plaintiff] so long to change his pads" because the ME had "not observed this amount of time in his professional experience." (*Id.* at 1152.) The ALJ further characterized the ME's testimony as follows:

> The doctor explained that the frequency of needing to change pads or clothing was generally five times per day, which was not necessarily five times in a workday. This indicates that [Plaintiff] would not need to change any more than every two hours unless he was taking a lot of water. He explained that it takes time to produce urine so usually, those who void more frequently have less volume, but typically, people need to urinate about every four hours, which would yield higher volumes when voiding less frequently. . . .
>
> [H]e pointed out that the record did not contain any specific notes or findings that would suggest that [Plaintiff] was perhaps producing an unusual amount of urine, which could explain why his pads and briefs were getting so saturated or why the pads were not otherwise working. After all, the expert testified that the pads used by [Plaintiff] are generally effective at absorbing normal quantities of urine and it was unclear why [Plaintiff] needed to change everything so often, not just his pads, but also his briefs and often clothing.

(*Id.* at 1153.) Based on this "review of the medical expert's testimony," the ALJ found that "the record does not fully substantiate that [Plaintiff] would be off task as much as he alleges due to needing to change his pads, briefs, and/or clothing so often." (*Id.*)

In attacking the ALJ's determination, Plaintiff argues that the ME – who has a primary specialty in internal medicine and a secondary specialty in pulmonology – is not qualified to render an opinion regarding Plaintiff's incontinence. According to Plaintiff, the ALJ "failed to explain how an internist with a specialty in pulmonology would have any expertise in Plaintiff's particular form of voiding problem." (Pl.'s Mem. at 11.) However, as the Commissioner points out, Plaintiff's

8

counsel did not object to the ME's qualifications at the hearing or cross-examine him regarding his expertise. The Court agrees with the Commissioner that if Plaintiff had questions about the ME's relevant knowledge given his secondary specialty, Plaintiff should have objected or solicited testimony as to the doctor's experience at the hearing. *See Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004) ("However, because Barrett's lawyer did not question the basis for the vocational expert's testimony, purely conclusional though that testimony was, any objection to it is forfeited.") (citation omitted)

      Plaintiff also argues that the ALJ impermissibly rejected the opinions of Plaintiff's treating physicians. In her decision, the ALJ noted a functional capacity assessment from an unidentified treating physician dated January 18, 2019, which "indicated that [Plaintiff] would need to take unscheduled breaks for 15-20 minutes four to six times per day" and further indicated time off task to be 20%. (R. 1158.) In addition to finding internal inconsistencies, the ALJ gave the opinion little weight "because the treatment records between 2012 and 2014 do not indicate the level of impairment suggested by this opinion dated much later and from an unknown source." (*Id.*) The ALJ also noted the opinion of Plaintiff's treating physician Dr. Coulson, who opined that Plaintiff's "incontinence would be problematic due to inconvenience of changing pads multiple times a day." (*Id.*) The ALJ found, however, that Dr. Coulson's assessment was too vague to be afforded substantial weight. Based on the analysis provided regarding the opinions of Plaintiff's treating physicians, the Court finds that the ALJ gave a sufficient explanation for affording

9

less weight to those physicians' opinions. *See Adrian Z. v. Berryhill*, No. 17-cv-4585, 2019 U.S. Dist. LEXIS 129383, at *4 (N.D. Ill. Aug. 2, 2019) ("When an ALJ declines to give controlling weight to a treating physician's opinion, he must provide a sound explanation for the rejection.") (citation omitted); *Patricia T. v. Saul*, No. 19 CV 614, 2020 U.S. Dist. LEXIS 92999, at *24-25 (N.D. Ill. May 28, 2020) ("A treating physician's opinion is entitled to controlling weight only where it is well-supported and uncontradicted by other substantial evidence in the record.") (citations omitted).

Ultimately, the Court agrees with the Commissioner that the ALJ reasonably accepted the expertise of the ME regarding the unusual nature of Plaintiff's alleged symptoms, as well as his assessment that the remainder of the record did not support that Plaintiff had such unusual symptoms that would require the amount of off-task time alleged. *See Patrice R. v. Saul*, No. 19 C 1285, 2021 U.S. Dist. LEXIS 22271, at *13 (N.D. Ill. Feb. 5, 2021) ("A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts or by making independent symptom evaluations.") (citation omitted). As set forth above, the ALJ provided a fulsome explanation regarding how she arrived at her symptomology findings, and this Court concludes that the ALJ built the requisite logical bridge between the evidence and her determination that Plaintiff's symptoms were less severe than alleged. *See Dragan K. v. Saul*, No. 19-cv-3283, 2020 U.S. Dist. LEXIS 12586, at *12 (N.D. Ill. July 16, 2020) ("[T]he Court finds the ALJ has build an

10

'accurate and logical bridge' between the evidence and his conclusions concerning Plaintiff's subjective symptoms.") (citation omitted).

## B. The Severity of Plaintiff's Mental Impairments

Plaintiff argues that the ALJ did not sufficiently account for his mental impairments. On that topic, the ALJ concluded that Plaintiff's "medically determinable mental impairments of conversion disorder, personality disorder and adjustment disorder with depressed mood . . . did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore nonsevere." (R. 1147.) In reaching that conclusion, the ALJ "considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders." (*Id.*) While conceding that "a finding of no-severity regarding mental impairments at Step 2 may, in and of itself, be harmless," Plaintiff argues that the ALJ engaged in a "flawed analysis of the [four] functional criteria" which "lead[] to the ALJ's failure to properly accommodate all of Plaintiff's non-exertional limitations." (Pl.'s Mem. at 13.)

As to the first functional area – understanding, remembering, or applying information – the ALJ determined that Plaintiff had no limitation, basing her conclusion on a discussion of Plaintiff's function reports, mental health records, and a consultive examination. (R. 1147.) As to the second functional area – interacting with others – the ALJ determined that Plaintiff had a mild limitation, noting that Plaintiff had reported "that he did not have problems getting along with family, friends, neighbors, or others, but also indicated that he was unable to spend time

11

with others due to pain and changing diapers." (*Id.*) The ALJ also noted that "the record generally indicates that [Plaintiff] was always cooperative and/or pleasant during his medical visits." (*Id.* at 1148.) The ALJ addressed the fact that Plaintiff "was diagnosed with cluster B traits in March 2013," but discounted that diagnosis because "no future mental health treatment was considered or recommended for [Plaintiff]." (*Id.*)

As to the third functional area – concentrating, persisting, or maintaining pace – the ALJ determined that Plaintiff had a mild limitation, reasoning that Plaintiff's complaints in this area "appear to be based largely on his physical symptoms or medications rather than because of his medically determinable mental impairments." (*Id.*) As to the fourth functional area – adapting or managing oneself – the ALJ determined that Plaintiff had a mild limitation, noting Plaintiff's reports that he handled changes in routine "OK" and "not bad" and "primarily discussed difficulties with personal care in relation to his physical impairment rather than difficulties with mental impairments." (*Id.*) In support of her ultimate conclusion that Plaintiff had only mild limitations in any of the functional areas, the ALJ indicated that she gave significant weight to two psychological consultants who had opined on the issues.

As set forth above, the ALJ provided a detailed analysis to support her findings regarding Plaintiff's mental impairments. In light of the ALJ's specific reasoning underlying her conclusions as to the four functional areas, the Court finds that the ALJ built the requisite logical bridge between the evidence and her mental

12

impairment determinations. *See Rick M. v. Saul*, No. 20 CV 4369, 2021 U.S. Dist. LEXIS 118024, at *15-16 (N.D. Ill. June 24, 2021 ("[T]he ALJ offered specific reasons – contrary evidence – that explain why plaintiff's medical record did not support incorporating any mental limitations in the RFC. That was enough to build the necessary 'accurate and logical bridge' between the minimal evidence of mental impairment in this case and the conclusion that Rick M.'s RFC does not include mental limitations.") (citations omitted).

## CONCLUSION

For the foregoing reasons, the points of error raised by Plaintiff are not well-taken. Accordingly, Plaintiff's motion for summary judgment [Doc. No. 17] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 30] is granted.

**SO ORDERED.**  **ENTERED:**

**DATE:**  **September 13, 2021**

 **HON. MARIA VALDEZ**
 **United States Magistrate Judge**